UNITED STATES DISTRICT COURT
                      DISTRICT OF MASSACHUSETTS

DERRICK WASHINGTON,              )
                                 )
          Plaintiff,             )
                                 )
     v.                          )    C.A. No. 11-10771-PBS
                                 )
MARYJO GAGLIANI, et al.,         )
                                 )
          Defendants.            )
                                 )


                        **MEMORANDUM AND ORDER**

                          **September 9, 2019**
Saris, C.J.


**I.   Introduction**

Pro se plaintiff Derrick Washington, an inmate at MCI-Cedar Junction, Walpole, Massachusetts, brings this action pursuant to 42 U.S.C. § 1983 in which he alleges that correctional officers used excessive force in the course of a forced extraction on September 29, 2008. During the extraction, the officers used chemical agents on Washington who has asthma. The Court appointed trial counsel and the claims against the officers settled just before trial.

Washington also claims that after the extraction, Nurse Gagliani failed to provide him with adequate medical care and was deliberately indifferent to his medical needs. Because the pleadings must be liberally construed, the Court treats this

claim as arising under the Eighth Amendment of the United States Constitution.[1]  The extraction and Washington's subsequent interaction with Nurse Gagliani were videotaped.  Defendant Nurse MaryJo Gagliani has moved for summary judgment. The court assumes familiarity with the Memorandum and Order setting forth the factual background of this case issued on April 9, 2018.  For the reasons set forth below, the Court **ALLOWS** the motion.

**II. Standard**

Summary judgment is appropriate when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "An issue is genuine if it can be resolved in favor of either party, and a fact is material if it has the potential of affecting the outcome of the case."  Leite v. Bergeron, 911 F.3d 47, 52 (1st Cir. 2018) (quoting Tang v. Citizens Bank, N.A., 821 F.3d 206, 215 (1st Cir. 2016)).  When ruling on a motion for summary judgment, the court "view[s] the facts in the light most favorable to the party opposing summary judgment," Rivera–Colón v. Mills, 635 F.3d 9, 10 (1st Cir. 2011), but "conclusory

---

[1] The trial judge who was originally assigned construed the claim as a negligence claim and referred the action to a medical malpractice tribunal which rejected the claim of negligence on September 27, 2014. Plaintiff submitted the unsworn expert opinion of Shawn M. Stanglellini RN (#295, Exhibit A) to oppose the motion for summary judgment. Even if the Court were to consider the opinion, the expert does not assert defendant was deliberately indifferent, just negligent.

allegations, improbable inferences, and unsupported speculation" are insufficient to create a genuine issue of material fact to survive summary judgment. Sullivan v. City of Springfield, 561 F.3d 7, 14 (1st Cir. 2009) (quoting Prescott v. Higgins, 538 F.3d 32, 29 (1st Cir. 2008)).

**III. Discussion**

An Eighth Amendment claim for inadequate medical care consists of a subjective and an objective component. See Perry v. Roy, 782 F.3d 73, 78 (1st Cir. 2015). As to the objective component, the plaintiff must plead facts which, if true, demonstrate that the deprivation was "sufficiently serious." Id. (quoting Leavitt v. Corr. Med. Servs., 645 F.3d 484, 497 (1st Cir. 2011)). "[A] serious medical need is 'one that is so obvious that even a lay person would easily recognize the necessity for a doctors' attention.'" Id. at 78-79 (quoting Gaudreault v. Municipality of Salem, 923 F.2d 203, 2018 (1st Cir. 1990)). The subjective component requires factual allegations supporting an inference of "deliberate indifference" by the defendant, a benchmark which "defines a narrow band of conduct." Id. (quoting Fenney v. Corr. Med. Servs. Inc., 464 F.3d 158, 162 (1st Cir. 2006)). This standard requires allegations supporting a conclusion that "that the absence or inadequacy of treatment is intentional" rather than simply inadvertent. Perry, 782 F.3d at 78.

3

Here, upon reviewing the video recording and evidence submitted by the parties, including plaintiff's deposition testimony and the medical records, the Court concludes that no reasonable juror could find that Nurse Gagliani was deliberately indifferent to Washington's serious medical needs. See Scott v. Harris, 550 U.S. 372, 380(holding in an excessive force case, that there was no genuine dispute of fact in light of the video). When Nurse Gagliani first spoke to Washington, he stated that he wanted "all" medical care, but he later fell silent. At some point, he said: "I can't think right now." When Nurse Gagliani specifically asked him on multiple occasions if he wanted his eyes flushed out, Washington, whose hands were handcuffed behind his back, did not respond. Nurse Gagliani stated that she would interpret his silence as a refusal. The video of their interaction shows her cleaning abrasions on his knees, forehead, left elbow, and right foot. She did not bandage any of the wounds. She also checked his pulse.

Washington claims that because Nurse Gagliani's treatment was not more thorough, he suffered multiple asthma attacks, contracted Hepatitis A through the open wounds on his feet, suffered from an untreated fractured hand for months, and experienced headaches and dizziness for weeks after the incident. Washington contends that his presentation at the time created a situation of urgency and the nurse should have brought

4

him to triage or bandaged his wounds. He also claims that she intentionally withheld treatment because she believed that his injuries were the result of his own actions.

When the videotape is viewed in the light most favorable to Washington, Washington, who was extremely verbal and belligerent before he was extracted from the prison yard, was likely unable to verbalize any complaints or respond to the nurse's inquiries as a result of the pepper spray. However, even if Nurse Gagliani should have conducted a more thorough examination of Washington, there is no evidence other than the visible wounds that were cleaned, that he had a medical need that was so obvious that a nurse would recognize the necessity for more medical attention. See, e.g., Farmer v. Brennan, 511 U.S. 825, 838 (1994) ("But an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment.")

Specifically, Washington made no complaints to the nurse about any pain in his hand. He did complain to another nurse the next day and he was eventually taken for an x-ray. The record is unclear as to when and whether his hand was broken. Even if his hand were fractured during the fracas, there is no evidence that shows that Nurse Gagliani was deliberately indifferent to any possible fracture. (Docket #278, 814). There were records in the

5

prison that Washington suffered from asthma. However, there is no evidence he was gasping for breath or having an asthma attack at the time she treated him. Finally, there is no reliable evidence he contracted hepatitis A from his unbandaged foot wounds or that the nurse was deliberately indifferent to this risk.

**III. Conclusion**

The Court **ALLOWS** Nurse Gagliani's motion for summary judgment (Docket #276).

SO ORDERED.

                                 /s/ Patti B. Saris _____
                                 PATTI B. SARIS
                                 CHIEF, U.S. DISTRICT JUDGE